**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JEFFERSON VEGA, | : | CIVIL ACTION NO.: 1:24-cv-1889 |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| HQ-PACK INC. d/b/a MIDAS, | : | |
| | : | |
| Defendant. | : | NOVEMBER 27, 2024 |

<u>**NOTICE OF REMOVAL**</u>

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT:**

Defendant HQ-Pack Inc. d/b/a Midas ("HQ-Pack"), for purposes of removing this case to the United States District Court for the District of Connecticut, states the following:

**A.     THE STATE COURT ACTION**

1.     On November 8, 2024, Plaintiff initiated an action against HQ-Pack in the Superior Court for the Judicial District of Hartford at Hartford, entitled <u>Jefferson Vega v. HQ-Pack Inc. d/b/a Midas</u>, No. HHD-CV24-6194225-S (the "State Court Action"), returnable December 3, 2024, by the service of a Summons and Complaint on Defendant.

2.     In accordance with 28 U.S.C. § 1446(a), HQ-Pack attaches hereto as <u>Exhibit A</u> copies of all process, pleadings, and orders served upon it in the State Court Action.  HQ-Pack also attaches hereto as <u>Exhibit B</u> a copy of the Return of Service Plaintiff filed with the Superior Court on November 8, 2024 and shows Plaintiff served the Complaint on HQ-Pack's agent for service, the Connecticut Secretary of State on November 1, 2024.

3.     Other than Plaintiff filing his Summons, Complaint, and Return of Service with the Superior Court on November 8, 2024, no further proceedings have been had in this action.

- 1 -

**B.    DIVERSITY OF CITIZENSHIP**

4.    Plaintiff's lawsuit against HQ-Pack is a civil action of which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.  HQ-Pack may remove this lawsuit to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction.

5.     The United States District Court for the District of Connecticut has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as this is a civil action between citizens of different states in which the amount in controversy exceeds the statutory requirement.

6.    The parties to this action are diverse.  Based upon Plaintiff's Complaint, and upon information and belief, Plaintiff is a citizen of the State of Connecticut.  (See Ex. A, Compl. ¶ 1.)

7.    HQ-Pack is not a citizen of Connecticut.  HQ-Pack is incorporated in Indiana and has its principal place of business in Evansville, Indiana. (See Compl. ¶ 2; Exhibit C, Declaration of Kenton Childs ¶ 2.) Because HQ-Pack is incorporated in and has its principal place of business in Indiana, it is a citizen of Indiana for purposes of diversity.  See 28 U.S.C. § 1332(c)(1).  Therefore, complete diversity exists between Plaintiff, a citizen of Connecticut, and HQ-Pack, a citizen of Indiana.

8.    "Diversity jurisdiction must exist both at the time the complaint is filed in state court and at the time of removal."  Rodriguez v. Clean Harbors Envtl. Servs., No. 3:07-CV-00444 (AVC), 2007 U.S. Dist. LEXIS 108839 at *4 (D. Conn. Jun. 21, 2007) (citing United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)).  Diversity of citizenship existed between the parties at the time Plaintiff Vega filed his Complaint.  Diversity of citizenship continues to exist at the time this Notice of Removal is being filed by HQ-Pack.

9.    Accordingly, the Court has jurisdiction over this action pursuant to 28 U.S.C. §

1332(a)(1) because there is complete diversity among the parties.

## C.    AMOUNT IN CONTROVERSY[1]

10.    Federal district courts have original jurisdiction over all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332.

11.    The Second Circuit has held that the party asserting jurisdiction has the "burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."  Tongkook America Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994).  Where a defendant seeks to remove an action, he must "allege in his pleading the facts essential to show jurisdiction" and must "support them by competent proof."  McNutt v. General Motors Acceptance Co., 298 U.S. 178, 189 (1936).  "Where the pleadings themselves are inconclusive as to the amount in controversy . . . federal courts may look outside those pleadings to other evidence in the record."  Dill v. Ron's Golf Car Rental, Inc., No. 3:12-CV-00137 (JBA), 2013 U.S. Dist. LEXIS 98511 at *7 (D. Conn. Jul. 12, 2013) (citing United Food, 30 F.3d at 305).

12.    Plaintiff's Complaint alleges the following claims against HQ-Pack: (a) race discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), CONN. GEN. STAT. § 46a-60(b)(7), (First Count); (b) sexual harassment in violation of CFEPA (Second Count); and (c) retaliation in violation of CFEPA (Third Count).  (See Ex. A, Compl. at 1, 6, 7.)

13.    Apart from a statement indicating Plaintiff's demand exceeds $15,000 (see Ex. A, Compl. at 7), Plaintiff's Complaint is inconclusive as to the amount in controversy.  However, Plaintiff seeks, among other things, money damages including lost wages and benefits of

---

[1] HQ-Pack in no way concedes Plaintiff can establish it is liable for any measure of damages.  Rather, this analysis is intended to demonstrate that, assuming Plaintiff could prevail on liability, more than $75,000 would be at issue.

employment, benefits of gainful employment into the future, "substantial emotional distress," punitive damages, and attorneys' fees and costs.  (See id. at 7, 9, 10.)

14.    **Lost Wages.**  Jurisdictional facts, "such as the amount in controversy," are evaluated "on the basis of the pleadings, viewed at the time when defendant files the notice of removal."  Howard v. Anthem, Inc., No. 3:22-CV-476 (SVN), 2022 U.S. Dist. LEXIS 194716 at *9 (D. Conn. Oct. 26, 2022) (citing Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 239 (2d Cir. 2014)).  Accordingly, courts in this circuit have held that a potential award for back pay should be calculated from the date of the termination through the date the defendant files the notice of removal.  Id. (citing Hager v. Steele, No. 20 Civ. 4482 (LGS), 2020 U.S. Dist. LEXIS 134511 at *2 (S.D.N.Y. Jul. 29, 2020); Jones v. Charter Comm'ns LLC, No. 18 Civ. 5953 (NG) (LB), 2019 U.S. Dist. LEXIS 67914 at *3 (E.D.N.Y. Apr. 22, 2019)).

15.    According to the Complaint, Plaintiff was terminated on or about March 18, 2024.  (See Ex. A, Compl. at 5.)  At the time Plaintiff last worked for HQ-Pack, he earned approximately $17.00 per hour or $35,360 annually.  (See Ex. C, ¶ 3.)  Accordingly, Plaintiff's estimated back pay from separation (March 18, 2024) through filing of this Notice of Removal (November 27, 2024) amounts to approximately $24,480.00.

16.    **Reinstatement and/or Front Pay.**  According to the Complaint, Plaintiff has asserted a claim for "[r]einstatement, or in lieu thereof, front pay."  (See Ex. A, Compl. at 9.)  Plaintiff further alleges he "has been deprived of the benefits of gainful employment into the future."  (Id. at 7.)

17.    District courts within the Second Circuit have considered the value of reinstatement, or in lieu thereof, front pay, as a measure of damages included in the amount in controversy.  See Hager, 2020 U.S. Dist. LEXIS 134511 at *5 ("With a salary of $250,000 per

- 4 -

year, Plaintiff need be awarded front pay for just over two and a half months to meet the jurisdictional minimum at the time of removal, and if Plaintiff were reinstated, the value of four months of employment at Defendant Steele Consulting, LLC would, on its own, exceed the threshold amount."); Leslie v. BancTec Serv. Corp., 928 F. Supp. 341, 329 (S.D.N.Y. 1996) (finding jurisdictional amount met in part because if the plaintiff, with a $29,600 per year salary, were "reinstated, that would be worth the amount of years he would work at the [d]efendant, also resulting in thousands of dollars").

18.     If Plaintiff were reinstated or awarded front pay, even just for six months, that amount would be approximately $16,320.

19.     **Emotional Distress Damages.**  District courts in Connecticut have considered a claim for emotional distress damages when calculating the amount in controversy.  See Howard, 2022 U.S. Dist. LEXIS 194716 at *10-11 (citing Braden v. Murphy, No. 3:11CV884 SRU, 2012 U.S. Dist. LEXIS 43912 at *2-3 (D. Conn. Mar. 29, 2012); Dill, 2013 U.S. Dist. LEXIS 98511 at *4). 'Emotional distress awards within the Second Circuit can generally be grouped into three categories of claims: garden-variety, significant, and egregious.'" Barham v. Wal-Mart Stores, Inc., No. 3:12CV1361(VAB), 2017 WL 3736702, at *2 (D. Conn. Aug. 30, 2017)(quoting Graham v. City of N.Y., 128 F. Supp. 3d 681, 714 (E.D.N.Y. 2015)).

20.     In the Second Circuit, evidence of garden variety emotional distress claims is generally limited to the plaintiff's testimony describing his injuries. Parris v. Pappas, 844 F. Supp. 2d 271, 278 (D. Conn. 2012).  Such claims do not require medical treatment or expert testimony and "generally merit $30,000 to $125,000 awards." Id. (quoting Thorsen v. County of Nassau, 722 F. Supp. 2d 277, 292 (E.D.N.Y. 2010).

21.     Here, where Plaintiff has asserted "substantial emotional distress," the Court can

reasonably conclude the value of said damages range (assuming liability, of course) between $50,000 to $200,000 or more for purposes of the amount in controversy. Sooroojballie v. Port Authority of New York & New Jersey, 816 F. App'x 536, 547 (2d Cir. 2020) (cases with "significant" emotional distress claims, awards "usually range from $50,000 to $200,000," but "[c]ourts have, in some instances, upheld awards exceeding $200,000.00.") (quoting Emamian v. Rockefeller Univ., No. 07 CIV. 3919 (DAB), 2018 WL 2849700, at *16, *18 (S.D.N.Y. June 8, 2018) (collecting cases)).

22.    **Punitive Damages.** A plaintiff's claim for punitive damages is properly considered when determining the amount in controversy, but such damages are examined with "closer scrutiny." Leskinen v. Halsey, 571 F. App'x 36, 39 n. 3 (2d Cir. 2014)).

23.    "Punitive damages available under state law can help a plaintiff meet the jurisdictional requirement even where they make up the bulk of the amount in controversy." Peoples Club of Nigeria Int'l, Inc. v. Peoples Club of Nigeria Int'l – N.Y. Branch, Inc., 821 F. App'x 32, 35 (2d Cir. 2020) (citing Bell v. Preferred Life Assurance Soc'y of Montgomery, 320 U.S. 238, 240, 64 S. Ct. 5, 88 L. Ed. 15 (1943); A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991) ("[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied." (citing 14A Wright & Miller, Fed. Prac. & Proc. § 3702)). Punitive damages are available under CFEPA. See CONN. GEN. STAT. § 46a-104 ("The court may grant a complainant in an action brought in accordance with section 46a-100 such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, punitive damages, attorney's fees and court costs.")  Courts have awarded punitive damages where employers were found to be liable for discrimination and retaliation on a wide range of awards,

including those that exceed $75,000.  See Hill v. Airborne 590 Freight Corp., 212 F. Supp. 2d 59, 77 (E.D.N.Y. 2002) (collecting cases upholding punitive awards between $10,000 and $1.25 million).

24.     Here, where Plaintiff has asserted "punitive damages" under CFEPA, the Court can reasonably conclude the value of said punitive damages range (assuming Plaintiff could establish malice or reckless indifference to support such an award) could easily exceed $75,000 for purposes of the amount in controversy.  Cush-Crawford v. Adchem Corp., 271 F.3d 352 (2d Cir. 2001) (upholding $100,000 punitive damages award where jury did not award plaintiff actual or nominal damages in Title VII sexual harassment claim).

25.     **Attorney Fees.**  "Attorneys' fees may be used to satisfy the amount in controversy only if they are recoverable as a matter of right pursuant to statute or contract."  Kimm v. KCC Trading, Inc., 449 F. App'x 85, 85 (2d Cir. 2012).  Because the CFEPA statutes at issue in this litigation provide for attorneys' fees, the Court should include reasonable attorney's fees in its calculation of the amount in controversy.  Plaintiff's attorneys' fees alone, after one-to-two years of litigation, almost certainly would exceed the jurisdictional amount.  Thus, it is plain that Plaintiff purports to put more than $75,000 in controversy.

26.     Even if the Court chooses not to include attorney's fees or punitive damages in its calculation of the amount in controversy, HQ-Pack has provided sufficient evidence of Plaintiff's other asserted damages (*e.g.,* back pay, reinstatement/front pay, and emotional distress damages) that satisfy the statutory minimum.

27.     **Settlement Demand**. Vega's counsel has made a settlement demand of $350,000 based on $40,000 in lost wages, future lost wages of $75,000 and emotional distress damages, punitive damages, attorneys' fees and costs. (See Exhibit D, Declaration of Kevin R. Brady ¶ 3,

Exhibit 1.)  The fact that Vega values the case at far more than $75,000 weighs in favor of finding that the amount in controversy requirement has been met.  See e.g., Speer v. Deutsche Bank National Trust Co., No. 3:23-CV-01492-SVN, 2024 WL 340777, at *4 (D. Conn. Jan. 30, 2024) (holding $145,297.86 settlement demand satisfied amount in controversy); Vermande v. Hyundai Motor Amer. Inc., 352 F. Supp. 2d 195, 202 (D. Conn. 2004) (a settlement demand "is only one factor in assessing the amount in controversy and [] courts must consider the context in which the settlement demand is made."); Grinnell Mut. Reins. Co. v. Haight, 697 F.3d 582, 585 (7th Cir. 2012) ("Although settlement negotiations are not admissible at trial pursuant to Federal Rule of Evidence 408 to prove liability or invalidity of the claim or its amount, they can be considered 'to show the stakes' when determining whether the amount in controversy is met.").  Plaintiff's settlement demand weighs in favor of finding the amount in controversy as met.

28.    **Similar Cases.**  When a plaintiff refuses to stipulate as to whether he will seek damages in excess of $75,000, and defendant cites to damages awards exceeding $75,000 in other similar cases, a court may find the defendant has met its burden as to the amount in controversy.  Konstantinidis v. First Student, Inc., No. No. 3:14-CV-00844 (JAM), 2014 U.S. Dist. LEXIS 173198 at *2-3 (D. Conn. 2014) (citing Semack v. 35 Hamden Hills Drive, LLC, No. 3:12-CV-1057 (JBA), 2013 U.S. Dist. LEXIS 12890 at *2 (D. Conn. 2013)).  Here, Ramadei v. Radiall USA, Inc., No. 3:21-cv-01435-JCH, 2024 WL 4198326 at *1 (D. Conn. Sept. 16, 2024), presents a recent case in which a plaintiff was awarded damages exceeding the statutory minimum of $75,000 for CFEPA discrimination claims.

**D.    THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED**

29.    Plaintiff's lawsuit against HQ-Pack is one HQ-Pack may remove to this Court pursuant to 28 U.S.C. § 1441(a) in that the United States District Court for the District of

Connecticut embraces the location where the State Court Action is pending, *i.e.*, Hartford, Connecticut.

30.     HQ-Pack has timely filed this Notice of Removal in that HQ-Pack first received a copy of the Summons and Complaint on November 1, 2024, and it has filed this Notice of Removal within thirty (30) days thereof.  See 28 U.S.C. § 1446(b)(1).

31.     Pursuant to 28 U.S.C. § 1446(d), HQ-Pack hereby certifies it has served a copy of this Notice on Plaintiff and filed a copy of this Notice with the State of Connecticut Superior Court Clerk, Judicial District of Hartford at Hartford.  HQ-Pack attaches a copy of the Notice filed with the Superior Court Clerk hereto as Exhibit E.

32.     Attached hereto as Exhibit F is the Civil Cover Sheet in this action.

12.     Undersigned counsel has signed this Notice pursuant to Rule 11 of the Federal Rules of Civil Procedure, in accordance with 28 U.S.C. § 1446(a).

13.     In filing this Notice of Removal, HQ-Pack does not waive any defects in service of process, venue, or personal jurisdiction.

**WHEREFORE**, HQ-Pack respectfully requests, in accordance with the provisions of 28 U.S.C. §§ 1332, 1441 and 1446, that this action now pending in the Superior Court for the State of Connecticut be removed to this Court, and that this Court proceed with this case as if originally initiated in this Court.

DEFENDANT
HQ-PACK INC d/b/a MIDAS

By its attorneys,


 /s/ Kevin R. Brady
Jeffrey A. Fritz, ct26667
Kevin R. Brady ct22135
Fisher & Phillips LLP
200 State Street, 13th Floor
Boston, Massachusetts 02109
(617) 722-0044
*jfritz@fisherphillips.com*
*kbrady@fisherphillips.com*


## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing NOTICE OF REMOVAL was emailed and mailed this 27th day of November 2024, postage prepaid, to:

Emanuele R. Cicchiello
Cicchiello & Cicchiello, LLP
364 Franklin Avenue
Hartford, Connecticut 06114
*manny@cicchielloesq.com*

*Counsel for Plaintiff*


 /s/ Kevin R. Brady
Kevin R. Brady

- 10 -